```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
RICHARD PRESS,                        :
                                      :
                    Plaintiff,        :    08 Civ. 09497 (KTD)
                                      :
          -against-                   :
                                      :
CONCORD MORTGAGE CORP., GLOBAL        :    ORDER
HOME LOANS & FINANCE, INC., LEXCAP    :
FUNDING CORP., SAFE HARBOR CAPITAL    :
FUNDING, GLOBAL/GIRIMONTI LLC, AND    :
DARON GIRIMONTI,                      :
                    Defendants.       :
-------------------------------------X
```

KEVIN THOMAS DUFFY, U.S.D.J.:

On June 30, 2009, Judge P. Kevin Castel granted plaintiff Richard Press a default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure and the corresponding Local Rules against defendants Concord Mortgage Corp., Global Home Loans & Financing, Inc., Lexcap Funding Corp., Safe Harbor Capital Funding, and Global/Girimonti LLC (collectively, the "Corporate Defendants"). On December 7, 2009, Magistrate Judge Gorenstein issued a Report and Recommendation ("Report and Recommendation") on damages against the Corporate Defendants. Report and Recommendation, Docket No. 41 (Dec. 7, 2009). On December 21, 2009, Press filed his objections to the same. On December 8, 2009, this case was transferred from Judge Castel's docket to mine. And I, for the reasons set forth below, accept

Magistrate Judge Gorenstein's well-reasoned Report and Recommendation with just a few minor changes as stated herein.

Also, presently before me is Press's motion pursuant to Rule 55 for default judgment against Daron Girimonti as an individual. For the following reasons, Press's motion is granted, and he is entitled to damages against Girimonti as provided hereinafter.

## I. DEFAULT JUDGMENT AGAINST CORPORATE DEFENDANTS

As stated above, I accept the Report and Recommendation of Magistrate Judge Gorenstein as to the Corporate Defendants with the following minor changes.

### A. Post-Termination Lost Wages

I agree with the Report and Recommendation that Press has alleged facts sufficient to show that he was "discharge[d] . . . because of [his] age" in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623(a)(1), and under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq., as well as under the other employment discrimination laws Press invokes. As the Report and Recommendation recognizes, this fact entitles Press "to backpay from the date of discharge until the date of judgment." Kirsch v. Fleet St., Ltd., 148 F.3d 149, 167-68 (2d Cir. 1998) (citations omitted). "Backpay" can include "lost salary, raises, and fringe benefits." Gilbert v. Hotline Delivery, No.

00-CV-0160, 2001 WL 799576, at *2 (S.D.N.Y. July 10, 2001) (citations omitted). It is also true, as the Report and Recommendation recognizes, that a plaintiff who succeeds on an employment discrimination claim has a duty to mitigate his damages. See Report and Recommendation at 8, and the cases cited therein.

However, in the Report and Recommendation, the burden of persuasion on the issue of mitigation is placed on the plaintiff. See Report and Recommendation at 8-10. Press accurately points out in his objection that it is actually the defendant in an employment discrimination case who bears the initial burden of showing, through submission of evidence, that the plaintiff has failed to satisfy his or her duty to mitigate damages. See Broadnax v. City of New Haven, 415 F.3d 265, 268 (2d Cir. 2005). A defendant can meet this burden by providing evidence that the "course of conduct that plaintiff actually followed was so deficient as to constitute an unreasonable failure to seek employment." Bonura v. Chase Manhattan Bank, 629 F. Supp. 353, 356 (S.D.N.Y. 1996) (citation omitted).

In this case, the Corporate Defendants have defaulted. As such, they have failed to offer any response to Press's allegations whatsoever. Thus, they have not met their burden of showing that Press's efforts to seek employment have been insufficient as an attempt to mitigate his damages. While I

3

acknowledge that Press's pleading of his efforts to seek employment and mitigate his damages is conclusory, at best, given that it is the defendants' burden to show that the plaintiff has failed to reasonably mitigate, I conclude that Press is entitled to an award of backpay from the date of his termination until August 2009 in the amount of $303,333.28.

B. Front Pay

With respect to Press's claim for front pay, given that the burden of showing insufficient mitigation of damages rests on the defendant in an employment discrimination case, see Broadnax, 415 F.3d at 268, I must reweigh the factors properly set out in the Report and Recommendation at 10. As the Report and Recommendation accurately states, in "deciding whether an award of front pay is appropriate, a court should consider (1) whether reinstatement [is] either impossible or impracticable (2) whether the plaintiff has a reasonable prospect of obtaining comparable employment; and (3) whether the calculation of front pay would involve undue speculation." Shannon v. Fireman's Fund Ins. Co., 136 F. Supp. 2d 225, 233 (S.D.N.Y. 2001) (internal quotation marks and citations omitted). Further, an "award of front pay is exclusively within a court's discretion." Id.

The Report and Recommendation concluded that front pay is not warranted in this case primarily because Press presented no evidence on his future employment prospects and, as such, an

4

award of front pay would be unduly speculative. Report and Recommendation at 10-11. Although the Corporate Defendants bear the burden of showing that Press has failed to mitigate his damages by seeking other suitable employment, I nonetheless affirm the conclusion of the Report and Recommendation because I agree that the calculation of front pay in this case would be unduly speculative. Press submitted an affidavit in which he attested that he is 65 years old and planned on working until he is at least 70 years old. Press Aff. ¶ 15 (Aug. 14 2009) ("Press Aff. 1"). Based on this assertion, he seeks front pay for five years in the amount of $650,000.00. See id.

I agree with Magistrate Judge Gorenstein's conclusion that Press's affidavit does not adequately explain why he would be unable to find work in the mortgage and financial sector, as he was employed by the Corporate Defendants, at any point over the next five years. Further, Press stated in his August 4, 2009, affidavit that he was then 65 and intended to work until he was 70. Press Aff. 1 ¶ 15. However, in his more recent June 2, 2010, affidavit, Press asserts that he is now 66, but nonetheless seeks $650,000.00 in front pay representing 5 years of future employment, which would bring him to 71 rather than 70 years old. Press Aff. ¶ 15 (June 2, 2010) ("Press Aff. 2"). This inconsistency causes me to doubt Press's intentions. It leads me to believe that 5 years was an arbitrary, speculative

5

number chosen for the purpose of receiving a windfall rather than out of a genuine intention to continue working until a date certain with reasons based in fact to believe that suitable work would not be available. It is well settled that "under no circumstances can . . . [a front pay] award be based on undue speculation." Rivera v. Baccarat, Inc., 34 F. Supp. 2d 870, 878 (S.D.N.Y. 1999). As such, any award of front pay from the Corporate Defendants would be unduly speculative, and I affirm the denial of front pay as stated in the Report and Recommendation.

C.  Liquidated Damages

In addition to the award of liquidated damages specified in the Report and Recommendation, which I adopt, I add $303,333.28 to reflect the total amount of backpay awarded in the Report and Recommendation and herein, for a total of $652,300.61 in liquidated damages.

D.  Prejudgment Interest

In the Report and Recommendation, Press was awarded prejudgment interest on his awards of back wages and liquidated damages. Again, I adopt the Report and Recommendation's analysis on this issue, but add that Press is also entitled to prejudgment interest on the additional $303,333.28 in post-termination lost wages and $303,333.28 in liquidated damages. Consequently, Press is hereby ordered to resubmit his

6

calculation of interest using a federal compound interest rate, as directed in the Report and Recommendation at 17–18.

## II. DEFAULT JUDGMENT AGAINST GIRIMONTI AS AN INDIVIDUAL

Defendant Daron Girimonti defaulted in this case on June 1, 2010, when he failed to appear for a hearing I scheduled by order dated May 18, 2010. I scheduled the hearing because Girimonti did not appear for trial in this case on May 17, 2010, a date mutually chosen by the parties. He notified me of his intent not to appear the week beforehand. His failure to appear and notice of intent to default precipitate my entry of a default judgment against him at this time pursuant to Rule 55 of the Federal Rules of Civil Procedure.

In the May 18 order, I also directed the parties to file proposed findings of fact and law, and any supporting affidavits and evidence I would find helpful in determining damages in the event of a default. Only Press appeared and filed submissions on damages. See Plaintiff's Proposed Findings of Fact and Conclusions of Law for Default Judgment Against Defendant Daron Girimonti, Docket No. 49 (June 2, 2010) ("Pl.'s Proposed Findings"). For the reasons stated below, I award Press a judgment against Girimonti of $1,554,951.28 plus prejudgment interest.

A.  Background

7

The claims remaining against Girimonti after the October 5, 2009, order dismissing counts one, two, six, and eleven against him as an individual are for: (1) unlawful discrimination, harassment, and retaliation under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 et seq., the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. §§ 290 et seq., and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-801 et seq.; (2) unpaid wages based on promissory estoppel, unjust enrichment, and quantum meruit; (3) failure to pay wages and wrongful discharge in violation of the New York State Labor Law ("Labor Law"), N.Y. Lab. L. §§ 190-99, 215; and (4) conversion.

Press seeks to recover from Girimonti $1,399,800.60 in lost wages (including unpaid wages, back pay, and front pay); $91,000 in lost benefits; $5,000 for conversion of personal property; $1,495,800.60 in emotional distress damages, $1,495,800.60 in punitive damages; liquidated damages of $400,833.31 under federal law and $87,241.83 under the Labor Law, $15,950 in court costs and attorneys' fees, as well as interest to be determined. See Pl.'s Proposed Findings ¶ 135. Girimonti filed no response.

As the Report and Recommendation establishes, damages may be determined based on documentary evidence alone "as long as [the Court has] ensured that there was a basis for the damages specified in [the] default judgment." See Report and

8

Recommendation at 3, and the cases cited therein. Being so satisfied, I make the following findings without a further hearing.

### B. Additional Facts Relevant to Press's Claims Against Girimonti as an Individual

In addition to the facts relevant to both the Corporate Defendants and Girimonti recited in the Report and Recommendation, I set out the following facts and legal conclusions specifically relevant to the claims against Girimonti.

For the duration of Press's employment, Girimonti was Press's direct supervisor. Pl.'s Proposed Findings ¶ 16. He served as the Branch Manager of the office where Press worked. Id. In the capacity of Press's supervisor, Girimonti had actual and apparent authority over Press. Id. ¶ 17. In addition, Girimonti had significant decision-making, managerial, executive and supervisory authority over all the Corporate Defendants, including the authority to make employment and personnel decisions, to hire and discharge employees and to make and recommend employment and personnel decisions. Id.

Upon Press's termination, Girimonti personally converted some of Press's personal property, including a laptop computer and accessories, personal documents, writing instruments,

9

photographs, and eyeglasses. Id. ¶ 35. Press values the property at $5,000.00. Id.

After Press was terminated, he made reasonable efforts to mitigate his damages by finding another job. See Press Aff. 2 ¶ 12. He has updated his resume and submitted it for review through personal contacts of his. Id. He responded to advertisements for positions by phone and email. Id. He searched online and contacted private and public entities looking for employment that his experience would qualify him to do. Id. He estimates that, since his termination, Press has spent at least three days and two evenings per week actively searching for employment. Id. His efforts have resulted in 15-20 interviews, but no job offers. Id. Press, now sixty-six years old, states that he intended to work five more years, making his intended retirement age seventy-one.[1] Id. ¶ 15.

### C. Conclusions of Law Regarding Press's Claims for Damages Against Girimonti as an Individual

As the Report and Recommendation correctly states, many of Press's claims for relief are duplicative in terms of the damages he seeks to recover. See Report and Recommendation at 7. As he is only entitled to recover once for each injury

---

[1] This assertion, however, conflicts with Press's previous affidavit in which he stated that he intended to work for five years from the date of that affidavit when he was sixty-five, making his intended retirement age seventy years old. Compare Press Aff. 1 ¶ 15 with Press Aff. 2 ¶ 15. As already explained, this inconsistency causes me undue speculation as to Press's intentions with respect to his retirement. See part I.B of this order on front pay.

10

regardless of how many legal theories he argues to establish liability, see id. (citing Indu Craft, Inc. v. Bank of Baroda, 47 F.3d 490, 497 (2d Cir. 1995.)), I will follow Magistrate Judge Gorenstein's method of discussing Press's entitlement to recovery in terms of the types of damages he claims.

### 1. Pre-termination Unpaid Wages

As the Report and Recommendation sets out, Press argues that he was not paid his full salary from 2004 through his termination in April 2007. See Report and Recommendation at 7. Press has established that he can maintain his FMLA claim, see 29 U.S.C. § 2611(4)(A)(ii)(I); Eckert v. Schroeder, 364 F. Supp. 2d 326, 327-28 (W.D.N.Y. 2005), his NYSHRLA and NYCHRL claims, see N.Y. Exec. L. § 296(1), (6); N.Y.C. Admin Code § 8-107(1), (6), and his Labor Law claim, N.Y. Labor Law § 190[3]; Bynog v. Cipriani Group, 1 N.Y.3d 193, 198 (N.Y. 2003) (stating that the relevant inquiry is the degree of control the purported employer exercised over the purported employee), against Girimonti. Further, although Press's allegation that Girimonti personally promised to answer for the debt of the Corporate Defendants is cursory, see Pl.'s Proposed Findings at ¶ 103, he also alleged sufficient facts to maintain his equitable, quasi-contract claims sounding in promissory estoppel, unjust enrichment, and quantum meruit against Girimonti.

11

Consequently, although I agree with the Report and Recommendation's estimation of Press's allegations relating to his promised wages as "somewhat conclusory", see Report and Recommendation at 7, I, too, will accept them as sufficient to show that Press was not paid the amounts that he was promised and find that he is entitled to $348,967.33 either on his quasi-contract claims, or alternatively, on his Labor Law claim or federal or state discrimination claims.

2. Post-Termination Lost Wages

Press has alleged sufficient facts to establish that he was discriminated and retaliated against in violation of the FMLA as well as the other employment discrimination statutes on which he relies. As such, Press is entitled to backpay from the date of discharge to the date of judgment. See 29 U.S.C. § 2617; Kirsch, 148 F.3d at 167 (ADEA context); Palma v. Pharmedica Commc'ns, Inc., No. 00-CV-1128, 2003 WL 22750547, at *17 (D. Conn. Sept. 30, 2003) (using the same damages analysis in the FMLA context as under Title VII).

As stated above, while it is true that a victim of discrimination has a duty to mitigate his damages, see Palma, 2003 WL 22750547, at *17, Girimonti has failed to meet his burden of demonstrating that Press has not made reasonable efforts to mitigate. See Broadnax, 415 F.3d at 268. Further, Press alleges sufficient facts to establish he has undertaken

12

reasonable efforts to mitigate his damages. See Press Aff. 2 ¶ 12. Consequently, Press is entitled to a judgment in the amount of $400,833.31 in post-termination lost wages from 2004 until the date of the entry of default judgment in this case, May 18, 2010.

### 3. Front Pay

For the reasons stated in part I.B of this order, I conclude Press is not entitled to front pay against Girimonti.

### 4. Lost Benefits

I adopt the analysis in the Report and Recommendation with respect to Press's claim for lost benefits against Girimonti. See Report and Recommendation at 11-12.

### 5. Liquidated Damages

As accurately set out in the Report and Recommendation, Press is entitled to liquidated damages under the FMLA and the Labor Law where, as here, the statutory violation was "willful". See id. at 12. I adopt the analysis in the Report and Recommendation on liquidated damages and, too, conclude that Press has pleaded sufficient allegations to constitute willfulness on the part of Girimonti. Accordingly, I award Press $749,800.64 in liquidated damages, representing an award equal to the amount of his total award of backpay against Girimonti.

### 6. Emotional Distress Damages

13

I adopt the analysis of emotional distress damages as set out in the Report and Recommendation, see id. at 13-14, and award Press $5,000 in compensatory damages for emotional distress against Girimonti.

### 7. Punitive Damages

I adopt the analysis of punitive damages in the Report and Recommendation, id. at 14-15, insofar as it states that $45,000 is a reasonable award even considering the state law claims alone, as Press is only entitled to punitive damages against Girimonti on his state law claims.

### 8. Conversion of Press's Property

Press has alleged, albeit in a conclusory manner, that Girimonti personally converted his property. See Press Aff. 2 ¶ 17. As such, as the Report and Recommendation concluded, Press has stated a claim for conversion, and is entitled to recover $5,000 as compensation for the conversion of his laptop and related items, personal documents, writing instruments, photographs, and eyeglasses. See Report and Recommendation at 13.

### 9. Attorney's Fees and Costs

As the Report and Recommendation accurately states, attorney's fees are available under the FMLA, see 29 U.S.C. § 2617(a)(3), the NYCHRL, see N.Y.C. Admin. Code § 8-502(f), and the Labor Law, see N.Y. Labor Law § 198(1-a). See Report and

14

Recommendation at 15-16. I adopt the Report and Recommendation's analysis with respect to attorney's fees and litigation costs, see id. at 16-17, as Press's attorney gives no more detailed admissible evidence in his June 2, 2010, affidavit than he did in his August 20, 2009, affidavit. Consequently, I deny Press's request for attorney's fees and award him $350 in costs.

### III. CONCLUSION

In sum, Press should be awarded damages as stated in the Report and Recommendation and as amended herein as follows:

Damages against the Corporate Defendants:

    $348,967.33 for pre-termination lost wages

    $303,333.28 for post-termination lost wages

    $652,300.61 in liquidated damages

    $5,000 for conversion his conversion claim

    $5,000 in compensatory damages for emotional distress

    $45,000 in punitive damages

    $350 for the cost of filing this lawsuit

The total sum of these awards against the Corporate Defendants without interest is $1,359,951.22.

Damages against Girimonti as an individual are identical to the damages he may recover against the Corporate Defendants except he is awarded $400,833.31 in post-termination lost wages as well as $749,800.64 in liquidated damages, for a total of $1,554,951.28 without interest.

15

In addition, I adopt the analysis of the Report and Recommendation with respect to prejudgment interest on Press's claims for back wages (pre- and post-termination lost wages) and on his award for liquidated damages. See Report and Recommendation at 17-18. Consequently, I order Press to submit his calculation of interest using a federal compound interest rate (assuming he still wishes to pursue his claim for prejudgment interest) to be added to the judgment awarded to Press herein.

I reiterate that Press is only entitled to one recovery for his injuries, see Indu Craft, Inc., 47 F.3d at 497, and enter judgment in favor of Press against the Corporate Defendants, jointly and severally, in the amount of $1,359,951.22 plus prejudgment interest to be determined and against Girimonti in the amount of $1,554,951.28 plus prejudgment interest to be determined.

SO ORDERED.

Dated:  New York, N.Y.
        August 5, 2010

_____
KEVIN THOMAS DUFFY, U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8-11-10